## Canon City Electric Light and Power Co. v. Conkle et al.

*District Court of Fremont County, May 29, 1900.*

Charles D. Bradley, A. Macon and Joseph H. Maupin for plaintiffs; Walter Scott, and Waldo and Dawson for defendants.

BAILEY, J.

By the general demurrer of the plaintiff, interposed to the third· and further defense of the defendants, to the complaint herein, the question is squarely presented as to whether the ordinance under which the defendant company now claims the right and authority to erect and maintain its lighting plant in the streets and alleys of the city of Canon City, is valid and of force.

The ordinance relied upon by the defendant, the new company, as giving to it this right, was passed May 15, 1899, under and by virtue of the provision of the statute of the state passed in 1893, 3 Mills Ann. St. § 4403 subd. 67, authorizing and empowering city councils and boards of trustees of towns to grant such powers. However, under the statute, in order to perfect such a grant of power, two things are essential, namely, the approval of the question by a majority of the taxpayers under the law in the municipality, by a vote at either a regular or special election, and the formal passage by the town board of an ordinance law effecting the grant. Each one of these steps must have been taken, under

the statute, in order to validate any ordinance attempting to authorize the erection, in a municipality, by any person or corporation, of either gas, electric light or water works plants.

The ordinance in question was regularly passed by the town board on May 15, A. D. 1899, while the law of 1893, aforesaid, was yet in force, but it was not submitted for approval by vote of the taxpayers until April 3, 1900, and until so submitted and approved, clearly, as an ordinance, was a nullity; that is, it had no force or effect until submitted to and approved by a vote of the taxpayers under the law, and it gave no right, power or authority until so approved to the defendant company to proceed with the erection of its works; it was an incomplete and unsettled matter; it was simply the beginning of a right. With matters in this unsettled and incomplete condition, the state legislature of 1899, passed a law, in effect July 5 of that year, (L. '99, pp. 419-20, §§ 1-3) in express terms, repealing, without a saving clause, the law of 1893, under which the ordinance in question was passed, and enacting a new and entirely independent law on the same subject, widely differing in some of its provisions from the one repealed. With the repeal of the law upon which it was based, the ordinance under which the defendant company now claims the right to proceed with the construction of its lighting plant, not having been at that time approved by a vote of the taxpayers under the law, as provided by statute, and being, therefore, merely an inchoate right, fell to the ground and became, was and is of no force or effect.

Upon this point the law is well settled. There is, indeed, no conflict of authority. In the case of Woodbury v. Grimes, 1 Colorado 100, Judge Hallett clearly announced this doctrine, and it is re-affirmed by the same learned judge in 2 Colorado 470, Purmort v. The Tucker Lumber Company. Our own Supreme Court again announces the same doctrine in the case of Hirschberg v. The People in 6 Colorado, 145. where Judge Elbert, among other things in this behalf, says, "The contention is that the law in force at the time the larceny was committed, having been repealed without any saving clause, the subsequent presentment, trial, conviction and sentence of the petitioner was without authority of law and void. This is undoubtedly the law and however much such a result is to be regretted, it cannot be avoided without overruling a uniform course of decision by the highest courts and

ablest jurists both of England and America."

Sedgwick on Statutory Construction says: "The effect of a repealing statute, I take to be to obliterate the statute repealed as completely from the records of parliament as if it had never passed, and it must be considered as a law that never existed, except for the purpose of these actions or suits which were commenced, prosecuted and concluded while it was an existing law. Upon this principle, the repeal of a statute puts an end to all prosecutions under the statute repealed, and to all proceedings growing out of it pending at the time of the repeal. Civil rights depend upon the statute unless vested, and fall with it."

Dwarris says: "When an act of Parliament is repealed, it must be considered, except as to transactions passed and closed, as if it had never existed."

Endlich says: "Where an act expires or is repealed, it is as regards its operative effect, considered, in the absence of provision to the contrary, as if it had never existed, except as to matters and transactions passed and closed. As to all future matters, as to steps yet to be taken, the repealed statute upon which they are based is treated as utterly obliterated. Every step taken under a statute that has been repealed, is utterly void; presentment, trial, conviction and sentence become illegal. The same rule applies to all proceedings whether civil or criminal, going on by virtue of a statute at the time of its repeal. Whenever the jurisdiction exercised in proceedings depends wholly upon statute, and the statute is repealed or expires by its own limitation, the jurisdiction is gone, and with it the whole proceeding, imperfect at the time of the repeal or expiration, falls to the ground, unless there be a reservation as to pending rights or causes. The same rule applies to rights or remedies founded solely on statute, and to suits pending to enforce such remedies. If, at the time the statute is repealed, the remedy has not been perfected, or the right has not become vested, but still remains executory, they are gone."

Sutherland says: "The general rule is, that, when an act of the legislature is repealed without a saving clause, it is considered, except as to the transactions passed and closed, as though it had never existed. Rights depending on a statute and still inchoate, not perfected by final judgment, or reduced to possession, are lost by repeal or expiration of the statute. Powers derived wholly

from a statute are extinguished by its repeal. All acts done under a statute while in force are good, but if a proceeding is in progress when the statute is repealed, and the powers it confers cease, it fails, because it cannot be pursued."

When, therefore, ordinance No. 182, passed by the city council under the 1893 statute, was submitted to the vote of the people for approval last month, it had no legal existence whatever and there was nothing to be voted upon and nothing to be approved in the nature of an ordinance at least. This ordinance, the rights of the Company not having been meanwhile perfected under it, fell with the repeal of the statute upon which it rested. The statute of 1899, not only directly repeals that of 1893, but declares the latter act, in express terms, to be in conflict with the former. The new law provided, in substance, among other things, that all persons or corporations thereafter taking franchises, like the one under consideration, from municipalities in this State, shall take them subject to the right reserved in the municipality, at intervals of ten and fifteen years from the date of the grant, to purchase such plants at their actual cash value, without any sum being added to such price for the franchises themselves or to condemn them as real estate is condemned. The law of 1893 above, under which was procured the passage of the ordinance in question, contained no such conditions. The simple statement of these facts must satisfy the unbiased judgment of any fair minded person that the clear intent of the legislature was, from that time forward, to preserve in the municipalities of this State, under the terms and conditions above indicated, these most valuable rights. The law of 1899, indicates conclusively that the legislative intent was to prohibit absolutely the granting in the future, by cities and towns, of unconditional franchises like the one herein involved. Since the new law went into effect before the defendant company had perfected its rights under the ordinance in question, and the statute upon which that ordinance was based had meanwhile been repealed, it must be held under all the authorities, on facts like these, that the right under that particular ordinance could never be perfected. To hold otherwise, would be an extraordinary exercise of judicial power and would in effect allow the new company to secure by a vote in April, 1900, an unconditional franchise to erect and maintain its lighting plant in this city under and by

virtue of a statute expressly repealed and wiped out as a law of the State some nine months before. It would, in effect, allow the defendant company to secure an unconditional franchise for general lighting business at this time, in this city, in the face of the fact that, since July last, a law of the State has been in full force and effect absolutely prohibiting the granting of any such unconditional right. To me, the conclusion is irresistible that the defendant company must take its rights, privileges and powers under the new law, and subject to the conditions imposed thereby, and this can only be done upon the approval of the question by the people and the passage of an ordinance under and subject to the provisions of the statute of 1899, which as yet has neither been done nor attempted.

The case of Callahan v. Jennings 16 Colo. 471, is not an authority here in any sense. Had the statute of 1899 been a mere amendment of the 1893 law, changing it only in unimportant particulars, then one might well enough doubt whether the old law had been interrupted. But such is not the situation in the case at bar. On the contrary, the old law was expressly repealed and a separate and independent act passed in its stead, containing, it is true, some of the features of the old law, but incorporating requirements of a most important character, affecting not only the substantial rights of the new company, but of any company which may hereafter seek to acquire like rights and privileges among us, and as well the rights of the city, as such, and of every single one of its citizens. The intent of the legislature is manifest, and whatever may be the opinion of individuals, as to the expediency of having another electric lighting plant for the city at this time, can have no effect upon the judicial determination of the question here involved. The function of courts is to declare the law, as understood by them, uninfluenced by any other consideration than to reach a correct legal conclusion, and on principle and authority there is no room, in my judgment, for two opinions as to the duty of the court upon the particular questions now for consideration and determination, which is one, not of a technical character, but of substance. The plain meaning and purpose of the legislature, by its act of 1899, to reserve to and retain in all of the cities and towns of this State the right to purchase, at intervals of ten and fifteen years after the grant—of the privilege to them, or to con-

demn, the plant of any gas, electric light, or water works company, whose right had not been perfected prior to the taking effect of that act in July of that year, must be upheld, and the defendant company required to take its franchise under the new law, which appears a most wise and beneficient one.

I reach the conclusion hereby expressed only after that full and careful consideration of the matter which its importance demands and against a strong original inclination to a contrary view, and, because of the importance of the questions determined and the public nature thereof, I take occasion to state my views in a written opinion which will be filed in the case.

The demurrer will be sustained.